**FOX et ux. v. ICKES, Secretary of the Interior.**

**PARKS et ux. v. SAME.**

**EDER v. SAME.**

Nos. 8263–8265.

United States Court of Appeals for the
District of Columbia.

Argued April 7, 1943.

Decided June 30, 1943.

---

Mr. Stephen E. Chaffee, of Sunnyside, Wash., with whom Messrs. E. C. Finney and Wm. G. Feely, both of Washington, D. C., were on the brief, for the appellants in Nos. 8263, 8264 and appellant in No. 8265.

Messrs. Clifford E. Fix, Associate Chief Counsel, and J. Kennard Cheadle, Chief Counsel, both of the Bureau of Reclamation, Department of the Interior, both of Washington, D. C., with whom Messrs. Warner W. Gardner, Solicitor, Department of the Interior, of Washington, D. C., and B. E. Stoutemeyer, District Counsel, of Portland, Or., and Richard J. Carr, Attorney, both of the Bureau of Reclamation, Department of the Interior, of Washington, D. C., were on the brief, for the appellee in each case.

Before EDGERTON and ARNOLD, Associate Justices, and EICHER, Chief Justice of the District Court.

ARNOLD, Associate Justice.

In 1905, under the authority of the Reclamation Act [1] the Secretary of the Interior undertook the construction and operation of the Yakima Project to irrigate lands in the State of Washington. In connection with this project the United States appropriated the unappropriated waters of the Yakima River under the statutes of the State of Washington.[2] It has kept these appropriations in good standing.

The appellants in the three appeals, which are consolidated here, have water-rights in the Sunnyside Division of the Yakima Project. These rights are based on water-right applications in the form of contracts with the United States made under the authority of the Reclamation Act. In all three cases a public notice dated March 2, 1909, fixed the obligations of appellants' predecessors at the sum of $52.00 an acre as a construction charge. The applications specified different amounts of water to be furnished in each of the three cases before us. In the Eder case the amount was three acre-feet per acre "or so much thereof as shall constitute the proportionate share per acre from the water supply actually available for the lands under said project." In the Parks case the amount was three acre-feet per acre "or as much as will be required successfully to irrigate the land, the amount so required to be determined by the authorized agent of the United States." In the Fox case the amount was "that quantity of water which shall be beneficially used * * * but in no case exceeding the share proportionate to irrigable acreage, of the water supply actually available as determined by the Project Manager or other proper officer of the United States."

Prior to 1930 the local managers and ditch masters of the projects distributed water to the lands in question here in amounts considerably in excess of three acre-feet. But by 1930 a shortage of water developed because of a dry cycle, and also because, as the project developed, more lands came under irrigation. To meet this shortage the Secretary of the Interior proposed the construction of a new reservoir (the Cle Elum Dam) to supply water to the project.

Under an Act of March 3, 1915,[3] before new construction can be undertaken for

---

[1] Act of June 17, 1902, 32 Stat. 388, 43 U.S.C.A. § 372 et seq.

[2] 8 Remington's Rev.Stat. of Washington, Title 48, §§ 7408–7413 (Wash. Sess. L.1905, C. 88, pp. 180–183).

[3] 38 Stat. 861, 43 U.S.C.A. § 470.

lands, the construction charge for which has been fixed by public notice, it is necessary to gain the consent of a majority of water-users affected by such increased cost. Negotiations were therefore commenced with the Sunnyside District, of which appellants are members, to induce them to agree to charges for the additional water to be supplied from the proposed new construction. The water-users refused.

Thereupon, in October, 1930, the Secretary issued a public notice setting out a plan to reimburse the Reclamation Fund for the cost of the new construction without consent of the water-users. The intent of this notice was to fix a limit on the amount of water which would be delivered to the users in the Sunnyside Division unless they paid an additional charge over and above the $52 an acre specified in the 1909 public notice. In determining the amounts of water to which the lands were entitled without additional charge the Secretary construed the original applications for water under the project as contracts with the Government. In cases like the Eder contract the amount was limited to the three acre-feet specified in the application. In cases like the Fox contract, where the application gave the user a "proportionate share" of the water, the proportion was fixed at and limited to three acre-feet. In cases like the Parks contract, where the measure of water was the beneficial use, an expert appointed by the Secretary fixed such beneficial use at three and one-half acre-feet per acre. It is admitted that these amounts were much less than the water which had been previously delivered to these lands by the Secretary.[4]

After fixing these amounts which were to be delivered without extra charge, the notice offered additional water for the same lands (provided it was available) at an annual rental of $1.50 per acre-foot. These rentals were to be applied to "the unsecured portion of the cost of the reservoir system in the Yakima project".

The notice then pointed out the advantages of paying this rental charge for additional water. It stated that the amount of water required to grow a successful crop depended upon labor and money in the preparation of lands and equipment to avoid waste. It pointed out that cheap storage sites were available "par-ticularly at Lake Cle Elum," and that it might be cheaper for a user to help pay for this storage by renting additional water than "to provide the necessary labor and equipment to secure an economical use of water". Finally, the notice offered each user the opportunity to procure "additional storage by participation in the construction of another reservoir" if he preferred that course to "strict economy in the use of the existing water supply".

The apparent expectation that water-users would pay this rental charge enabled the Secretary to make a finding that the proposed construction of the Cle Elum Dam would probably repay its cost to the United States. That finding was set out in a letter to the President dated December 11, 1930, in which the Secretary stated that $1,000,000 of the cost of the Cle Elum Dam was to be repaid by rentals from the Sunnyside Division of the Yakima project.

The project was approved and the dam constructed. Appellants were informed that no water in excess of three acre-feet in the Fox and Eder cases, and three and one-half acre-feet in the Parks case would be furnished unless they signed an agreement to pay additional rent.

The intention of the Secretary is to make a charge for any water distributed to appellants' lands which is over and above the amounts which he has determined to be within the obligations of the contracts signed by the appellants' predecessors in interest. The purpose of the charge is to reimburse the Reclamation Fund for the proportion of the construction cost of the Cle Elum Reservoir which the Secretary assessed to the Sunnyside Division of the Yakima project.

■ Appellants seek to enjoin the Secretary from carrying out his intention as expressed in his notice of October, 1930, and his subsequent actions. During the proceedings the Secretary revoked the notice and moved that the actions be dismissed on the ground the cases had become moot. However, it is clear from the record that the Secretary still intends to impose a charge upon available water to be furnished on appellants' lands and, therefore, the revocation of the notice itself (which is simply evidence of his intention) does not remove the substance of appellants' causes of action.

---

[4] Appellants claimed that 4.48 acre-feet in the Fox case, 5.56 acre-feet in the Eder case, and 6 acre-feet in the Parks case were necessary to irrigate their lands.

The position of the Secretary is that the applications made by appellants' predecessors in interest were contracts which define the maximum amount of water which the Government is to furnish for a construction charge of $52.00 per acre. According to this theory, additional water must be paid for by the users in order to reimburse the Reclamation Fund for the new construction which made that additional water available.

The court below followed the theory of the Secretary that the applications for water-rights under the Yakima project were contracts with the government. It interpreted these contracts to mean that the Secretary was entitled to determine the amount of water which he was under obligation to deliver to appellants without extra charge, and that his decision could not be reviewed since it had been fairly arrived at and supported by substantial evidence.

In holding that appellants' rights were dependent on the enforcement of contracts with the United States, we think the trial court failed to follow the decision in Ickes v. Fox,[5] decided by the Supreme Court in a previous appeal in these proceedings. That appeal arose on motion to dismiss on the ground that the government was an indispensable party. In denying that motion the Supreme Court held that the rights of applicants were not limited to the enforcement of any contract with the government. The opinion said: "Under the Reclamation Act, * * * as well as under the law of Washington, 'beneficial use' was 'the basis, the measure, and the limit of the right.' * * * Appropriation was made not for the use of the government, but, under the Reclamation Act, for the use of the landowners; and by the terms of the law and of the contract already referred to, the water rights became the property of the landowners, wholly distinct from the property right of the government in the irrigation works."

A petition for rehearing filed in the Supreme Court by the Solicitor General makes it apparent that the principal issue in this case was before the Supreme Court on the former appeal. In that petition for rehearing the Solicitor General pointed out to the Court that the decision would lead to serious consequences in the administration of the Reclamation Fund because it gave applicants, on the sole basis of prior deliveries of water, a vested right in a larger amount of water than was stipulated in their contracts. The petition for rehearing pointed out that this amounted to giving them a prescriptive right based on permissive use. The petition also relied on a Washington statute which gave the government the right to appropriate water. We can see no difference between the appellee's position here and his unsuccessful argument before the Supreme Court of the United States.

Reading the Reclamation Act in the light of the decision in Ickes v. Fox, we find the situation in this case to be as follows: The water-rights of appellants are not determined by contract but by beneficial use. The Secretary of the Interior in operating the project is in the position of a carrier of water to all entrymen in the Reclamation project. He is not obligated to furnish any more water than is available. Under the Reclamation Act he is not authorized to furnish any water at all except for beneficial use. He must distribute the available water according to the priorities among the different users which are established by the law of the State of Washington. He has no concern in disputes between the various entrymen which concern their respective priorities, other than as a stakeholder. He can only make such charges to reimburse the Reclamation Fund for the construction of the project as are provided in the Reclamation Act itself.

Section 4 of the Reclamation Extension Act of August 13, 1914,[6] provides that no increase in construction charges shall be made after the same have been fixed by public notice, except by agreement between the Secretary of the Interior and a majority of the applicants and entrymen affected. The public notice in this case provided for a charge of $52.00 an acre. No increase in that construction charge can, therefore, be assessed.

The rentals in this case cannot be treated as charges for maintenance as was the case in Nampa & Meridian Irrigation District v. Bond.[7] Nor can the construction in this case be considered as construction of a new project. The notice of October 17, 1930, describes the payment which the

---

[5] 1937, 300 U.S. 82, 57 S.Ct. 412, 416, 81 L.Ed. 525.

[6] 38 Stat. 687, 43 U.S.C.A. § 469.

[7] 1925, 268 U.S. 50, 45 S.Ct. 383, 69 L.Ed. 843.

Secretary demands for additional water not as money for a new project but as "payment of the unsecured portion of the construction costs of the reservoir system of the Yakima Project." The letter to the President of December 11, 1930, in which the cost of the Cle Elum dam is estimated at $3,500,000, states that it "constitutes a part of the storage system of the project, the total actual and estimated cost of which is $11,558,000." Prior to the making of the contract for the construction of the Cle Elum reservoir the Secretary apparently considered it came within Section 469 because he entered into negotiations with the water-users in accordance with the provisions of that section. The negotiations failed, and the Secretary cannot subsequently make charges for increased construction costs.

The appellee contends that even if the Secretary of the Interior had no authority to make the contracts or to issue the notices which preceded the construction of the new reservoir, nevertheless appellants cannot accept the benefits of the additional water without paying for it. A party cannot accept the fruits of an unauthorized contract and at the same time repudiate its burdens. To support this, decisions are cited involving private irrigation projects.

■ Such decisions are not relevant here. The new reservoir in this case was undertaken in violation of Section 470, which provides that no work shall be undertaken on any lands on which the construction charge has been fixed by public notice, if that work, in the opinion of the Secretary, increases the construction charge above the charge in the notice "unless and until valid and binding agreement to repay the cost thereof shall have been entered into between the Secretary of the Interior and the water-right applicants and entrymen affected by such increased cost." To allow the Secretary to collect for unauthorized construction on the ground that the farmers were unjustly enriched would be a strained construction of the Act.

Furthermore, there is no showing of unjust enrichment and none can be assumed from the facts. The history of reclamation projects indicates that individual farmers have not been the principal beneficiaries of such public works. When the reclamation projects were started farmers were induced to pay for the construction costs on the theory that the irrigation would be profitable. The basis for estimating those profits ordinarily was the going price of the crops. But the consequence of the development of irrigation projects was a vast new agricultural production which lowered prices. This was of inestimable benefit to consumers. It created new demands for many crops at lower levels. But the lowered prices caused by the increased production prevented the farmers from reaping any pecuniary reward whatever. Sometimes generations of farmers would be ruined before the cost of the project could be absorbed and the lands profitably operated at new price levels. Whether this occurred in the Yakima project or not does not appear. However, it cannot be assumed that farmers under a reclamation project are in the position of sole beneficiaries of public funds, so that they will reap an inequitable reward if additional water is furnished them at public cost. There is no reason in public policy for construing Sections 469 and 470 of the reclamation laws[8] to achieve such a result.

■ Of course the appellants can claim no more water than can be beneficially used on the lands. And so the trial court heard evidence on what amount of water was required for beneficial use. It found that the amounts determined by the Secretary were sufficient for that purpose. On the basis of these findings the appellee contends that the water-users can claim no additional water because the limit to which they are entitled for beneficial use has been determined by the court with sufficient evidence.

■ We need not review that evidence because it is apparent that the court below made its findings on beneficial use under an erroneous theory. The Secretary in this case is not claiming that no more water than the amounts determined under the notice can be used beneficially on the lands. He is offering to sell more water to appellants. His notice gives the water-users a choice between expending money for additional labor or equipment and renting additional water. This constitutes an admission that the additional water can be used beneficially. Under the Reclamation

[8] 43 U.S.C.A. c. 12 (Act of August 13, 1914, § 4, 38 Stat. 687; Act of March 3, 1915, § 1, 38 Stat. 861).

Act the Secretary would have no right to spend public funds and to supply water for a use that was not beneficial.

In making its findings we think the court below confused beneficial use with economical use. The economical use of water is far different from its beneficial use. Economical use requires labor, equipment, more efficient ditches, etc. It is often unprofitable because the expense involved is greater than the money returns on the crop will justify. A property right once acquired by the beneficial use of water is not burdened by the obligation of adopting methods of irrigation more expensive than those currently considered reasonably efficient in the locality.[9] It is apparent that the Secretary himself does not consider the use of more water than the limits set in his notice of October, 1930, as unreasonable in this case. The notice itself encourages the water-users to rent additional water rather than to construct expensive improvements.

The decision of the lower court actually does not determine how much water may be beneficially used on these lands; it determines only how much water the Secretary must furnish without additional charge under the terms of an alleged contract with the government. But under the decision of Ickes v. Fox, the water-rights here are not based upon the construction or enforcement of contracts with the government.

It may well be that the so-called contracts are relevant to determine the priorities of the water-users with respect to each other. That issue cannot be decided here because the other users are indispensable parties.[10] The Secretary has no interest in such a proceeding except as a stakeholder. He has already filed with the United States District Court for the State of Washington, proceedings to adjudicate the water-rights in the entire project.[11] The extent of appellants' rights as against other users must be tried in that proceeding. Here the sole question relates to the power of the Secretary to charge the users for such water as the appellants may be entitled to receive without violating the rights of other water-users.

It was suggested by the government in the court below that this question should be left to the court in the State of Washington. The trial court properly exercised its discretion in denying this suggestion. A representative suit having the same purpose as these proceedings was originally filed in the United States District Court for the State of Washington against resident subordinates of the Secretary of the Interior. The Circuit Court of Appeals for the Ninth Circuit directed that the suit be dismissed on the ground that the Secretary of the Interior was a necessary party.[12] Appellants were then compelled to bring the present proceedings in the District of Columbia in order to get service on the Secretary. The litigation has been long drawn out and expensive. Under these circumstances, it would have been inequitable for the court to have deprived appellants of a decision on the merits after they had been compelled to resort to the District of Columbia court by the appellee himself.

An injunction should issue, therefore, restraining the Secretary from imposing a rental charge on any water which he determines may be used on appellants'

[9] A typical expression of the rule is as follows: "While an appropriator can claim only the amount which is necessary to properly supply his needs, and can permit no water to go to waste, he is not bound, as here claimed, to adopt the best method for utilizing the water or take extraordinary precautions to prevent waste. He is entitled to make a reasonable use of the water according to the custom of the locality, and, as long as he does so, other persons cannot complain of his acts. The amount of water required to irrigate his lands should, therefore, be determined by reference to the system used, although it may result in some waste which might be avoided by the adoption of another or more elaborate and extensive distribution system." Tulare Irrigation District et al. v. Lindsay-Strathmore Irrigation District, 1935, 3 Cal.2d 489, 45 P.2d 972, 1009, 1010. Farnham on Waters, § 675; Wiel on Water Rights, 3d Ed., § 481; Barrows v. Fox, 98 Cal. 63, 32 P. 811.

[10] Commonwealth Trust Co. v. Smith, 1924, 266 U.S. 152, 45 S.Ct. 26, 69 L.Ed. 219.

[11] Kittitas Reclamation District, et al. v. Sunnyside Valley Irrigation District, et al., pending in the United States District Court for the Eastern District of Washington.

[12] Moore v. Anderson, 1933, 68 F.2d 191, cert. den. 1934, 293 U.S. 567, 55 S. Ct. 78, 79 L.Ed. 666.

lands in order to pay construction costs in the reservoir system of the Yakima Project above the $52.00 an acre specified in the original notice.

The amount of water to which appellants are entitled by reason of prior appropriations for beneficial use can only be finally determined by a court of the State of Washington. However, when the Secretary decides that there is surplus water available which can be delivered to appellants without violating the rights of others, he must make a tentative determination of appellants' rights. The order should, therefore, restrain the Secretary from making that tentative determination of appellants' rights to receive water by construing their applications as contracts with the Government.

The judgments are reversed and the causes remanded for further proceedings in accordance with this opinion.

Reversed and remanded.