NICHOLS, Senior Circuit Judge.
 

 This is an appeal from a judgment by the United States Claims Court denying appellants’ motions for summary judgment and allowing appellee’s cross-motions for summary judgment. The jurisdiction of that court was invoked under the Tucker Act, 28 U.S.C. § 1491. Appellants seek damages from the United States based on the United States Bureau of Reclamation’s (Bureau) asserted breach of a contractual obligation to inform appellants accurately in February 1977 of the total amount of water expected to be supplied to them from the Yakima water project during the 1977 growing season. The Claims Court found that (1) the Bureau had no contractual obligation to forecast the water supply and (2) the appellants were neither parties to any contract with the Bureau nor third-party beneficiaries of contracts between the Bureau and the irrigation districts from which the appellants were furnished their water.
 

 Although we disagree with the Claims Court’s assessment concerning appellants’ right to sue as third-party beneficiaries to the district-Bureau contracts, we conclude, as the court below did, that the Bureau has undertaken no contractual obligation to
 
 *1573
 
 furnish accurate water supply projections. Therefore, we affirm the Claims Court’s granting of appellee’s motion for summary judgment and its dismissal of the complaints.
 

 Facts
 

 The circumstances from which this litigation arose have been set forth in detail by the court below in
 
 Orchards v. United States,
 
 4 Cl.Ct. 601, 602-04 (1984). Therefore we recount only briefly the most salient facts of this case. Appellants, who farm parts of the eastern section of the State of Washington, are members of the Yakima Project Irrigation District. In 1905, the Secretary of Interior, acting pursuant to the Reclamation Act of 1902, 32 Stat. 390 (codified throughout 43 U.S.C. ch. 12 (1976)), authorized the construction of the Yakima Project, which stores, diverts, and delivers irrigation water from the Yakima River. The Bureau contracts to deliver water from the Yakima Project to irrigation districts organized under Washington State law. The districts, and ultimately the water users, are charged by assessment to repay the costs of the project’s construction and for government operating and maintenance costs.
 

 The method of determining the proper allocation of water for various irrigation districts is founded upon a consent decree entered by the United States district court in
 
 Kittitas Reclamation District v. Sunnyside Valley Irrigation District
 
 (Eastern District of Washington, Southern Division, Civil Action No. 21). The decree sets forth the normal allotment of water as well as the procedure for allocation of water in times of shortage. In such times the “Total Water Supply Available” (TWSA), defined as:
 

 that amount of water available in any year from natural flow of the Yakima River, and its tributaries, from storage in the various Government reservoirs on the Yakima watershed and from other sources, to supply the contract obligations of the United States to deliver water and to supply claimed rights to the use of water on the Yakima River, and its tributaries, heretofore recognized by the United States[,]
 

 is to be allocated first to those with senior, nonproratable water rights and then to the extent possible to those holding junior, pro-ratable rights. Appellants base their claims on the irrigation districts’ contracts with the Bureau which incorporate this consent decree by reference and on the decree itself.
 

 The Yakima area experienced a water shortage in the first months of 1977 due to drought and low snow pack. On February 7, 1977, the Bureau issued a TWSA estimate projecting that the districts would receive 100 percent of their nonproratable entitlements and only approximately 7 percent of their proratable allotments. Farmers having proratable water rights reacted to the estimate by planting less water-intensive crops, allowing lands to lie fallow, selling off livestock prematurely, and generally acting to reduce water consumption.
 

 In the months following the original TWSA estimate, the Bureau upgraded the TWSA several times. Ultimately those with proratable rights received 70 percent of their entitlements, the correct amount under the circumstances. Nevertheless, by the time the farmers learned that they would receive this water, allegedly it was too late to avoid losses in the millions of dollars. Appellants allege that the Bureau breached its contracts by estimating the TWSA negligently in February 1977. The Bureau counters that its February estimate, provided by the Bureau as a sovereign act, was as accurate as possible given the information available and thus not negligent, and that the upgrading of the TWSA several times was a result of unforeseen precipitation and return flow. The appellants believe and would attempt to show that incorrect forecasting of future weather was not the sole cause of the errors; that it was due also to errors as to the extent water, once delivered to users of it, returns to the system and is again available to downstream users.
 

 
 *1574
 

 Discussion
 

 In reviewing the Claims Court decision granting summary judgment, we note that appellants receive the benefit of all applicable presumptions, inferences, and intendments and that summary judgment is appropriate only when there is no genuine issue of material fact.
 
 Adickes v. S.H. Kress and Company,
 
 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). We agree with the Claims Court’s determination that there is no genuine issue of material fact and that appellee is entitled to judgment as a matter of law as the Bureau was under no contractual obligation to accurately estimate the TWSA. Appellants’ action sounds not in contract, but in tort, if it lies at all, and the Tucker Act, which was the source of jurisdiction, confines it to “cases not sounding in tort.” Section 1491(a)(1).
 

 Appellants assert that their contract right to receive a properly estimated TWSA is premised upon the
 
 Kittitas
 
 consent decree, and contracts which incorporate that decree. The farmers construe the decree as including an implied requirement to communicate TWSA computations; the requirement is allegedly necessitated by the farm-, ers’ need to know their allocations in order to plan correctly which crops to plant and the acreage to be planted. Thus the right to water is conditioned on timely notice of the allocation.
 

 We discover no contractual duty to project the TWSA correctly, or at all, or warranty that any projection made will be correct. A consent decree is construed as a contract for enforcement purposes, and aids to construction, such as circumstances surrounding formation of the decree and the technical meanings words may have had to the parties, may be considered.
 
 United States v. ITT Continental Baking Co.,
 
 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975). Still, the “scope of a consent decree must be discerned within its four comers, and not by reference to what might satisfy the purposes of one of the parties to it or by what might have been written had the plaintiff established his factual claims and legal theories in litigation.”
 
 Firefighters Local Union No. 1784 v. Stotts,
 
 — U.S. -, -, 104 S.Ct. 2576, 2586, 81 L.Ed.2d 483 (1984) (quoting
 
 United States v. Armour & Co.,
 
 402 U.S. 673, 681-82, 91 S.Ct. 1752, 1757-58, 29 L.Ed.2d 256 (1971)).
 

 Appellants cannot point to, nor can we find, any provision of the consent decree which expressly obligates the Bureau to forecast the TWSA. The consent decree specifies that the “obligations of the United States to
 
 deliver
 
 water from the * * * Yakima River” are set forth in the agreement, and in paragraph 18, provides for the instance when a shortage occurs.
 

 If for any cause it is impossible to supply fully [the normal water] quantities, the water subject to proration * * * shall be proportionably diminished. The pro rata share of that water which each of the parties to this judgment shall receive during a period of insufficient supply shall be an amount in the same proportion to the quantity of water subject to the proration that each of the parties is entitled to under this judgment as the total water supply available, as hereinafter defined * * *.
 

 This paragraph and the definition of TWSA are the sum and sole expression of the government’s decree-based obligation in the event of a water shortage. Indeed, the parties characterized and limited the decree in the final paragraph which says that the “judgment shall constitute a
 
 final determination of the obligation of the United States to deliver water.”
 
 (Emphasis supplied.) There is no provision in any subsequent contract which increases the government’s duties in the event of a shortage to include forecasting. Thus, after examining the four corners of the consent decree, this court can discern no obligation to project the TWSA accurately. All that is evident is an undertaking by the government to deliver water to various water owners.
 

 Looking to the aids of contract construction, we find nothing in the history surrounding the formation of the contract which buttresses appellants’ characterization of the decree. The 1945 consent de
 
 *1575
 
 cree was entered ending a suit for declaratory judgment to determine the obligation of the Bureau to deliver water to the Sunnyside irrigation district and to determine the respective water rights of all the users of the Yakima River. The case was settled following the decision of
 
 Fox v. Ickes,
 
 137 F.2d 30 (D.C.Cir.1943), where the court held that the water users had property rights and that the Bureau was obligated to distribute the available water according to priorities established under State of Washington law. Considering this litigation history from which the “contract” arose, we note that at the time of contract formation, only the government’s obligation to deliver the Yakima River water and the farmers’ respective property rights to that water were at issue. There is nothing surrounding the contract formation which suggests that the government sought to expand the issues resolved in the decree beyond those which were the subject of the litigation. We also note that prior to the entrance of the decree, indeed prior to 1977, the government had never computed a TWSA nor projected any allocations of water in times of shortage. Thus there is nothing in the circumstances surrounding the entrance of the decree or in any custom or usage to suggest that the decree was formalizing any prior act or obligation of the government to forecast the TWSA. Construing the consent decree as a contract, as we must for enforcement purposes, we find that at the time of contract formation the parties did not intend to obligate the Bureau to forecast accurately the TWSA. Such an obligation cannot now be added by this court. (We also have considered appellants’ brief argument that the February TWSA estimate amounted to an anticipatory breach of the consent decree; we find this argument unpersuasive.)
 

 Appellants also assert that the government’s obligation is founded upon an implied-in-fact contract, and that this issue, which is premised upon disputed facts proving the intent of the parties to contract, should have been reserved for trial. We agree with the Claims Court’s determination that summary judgment was appropriate in this instance. We can assume that the Claims Court has jurisdiction over implied-in-fact contracts, as it has held.
 
 Pacific Gas & Electric Co. v. United States,
 
 3 Cl.Ct. 329, 338 (1983). To prove that an implied-in-fact contract exists, claimants bear the burden they had to bear in the former Court of Claims. They have to show mutuality of intent to contract, offer and acceptance, and that the officer whose conduct is relied upon had actual authority to bind the government in contract.
 
 See generally City of Alexandria v. United States,
 
 737 F.2d 1022 (Fed.Cir.1984);
 
 Cutler-Hammer v. United States,
 
 441 F.2d 1179, 1182 (Ct.Cl.1971) (the contract “must be stated in the form of an undertaking, not as a mere prediction or statement of opinion or intention”). Appellants contend that the authority to make a contract to forecast the TWSA accurately can be found in the consent decree to which the government is a signatory. Appellant has not asserted a basis showing any government agent’s authority to obligate the government to potential liability for faulty projections of the TWSA separate from the consent decree. Having considered the decree under the rules of contract construction, we have found that no term exists in the decree. Since the government signed only that decree, its authority to bind itself flows only to that decree and only to that which is agreed within the decree. The party moving for summary judgment has the burden of proving that no genuine issue of material fact exists. Where, as here, the moving party meets that burden, the nonmoving party must show that an issue of material fact does exist. (“[Although the moving party be unaided by any presumption, when he has clearly established certain facts the particular circumstances of the case may cast a duty to go forward with controverting facts upon the opposing party, so that his failure to discharge this duty will entitle the movant to summary judgment.” 6 J. Moore, W. Taggart & J. Wicker,
 
 Moore’s Federal Practice
 
 ¶ 56.15[3] (2d ed. 1984).) Here the government met its burden; appellants did not.
 

 
 *1576
 
 Appellants’ claims, arising from a predicted natural disaster that did not happen, is actually the kind of governmental error which may cause heavy loss, but cannot be placed in the context of jurisdiction under the Tucker Act, 28 U.S.C. § 1491, that we must deal with here.
 
 City of Manassas Park v. United States,
 
 633 F.2d 181 (Ct.Cl.),
 
 cert. denied,
 
 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980);
 
 Eastport Steamship Corp. v. United States,
 
 372 F.2d 1002 (Ct.Cl.1967). We are aware, and appellants correctly point out, that “an action may be maintained * * * which arises primarily from a contractual undertaking regardless of the fact that the loss resulted from the negligent manner in which defendant performed its contract.”
 
 Bird & Sons, Inc. v. United States,
 
 420 F.2d 1051, 1054 (Ct.Cl.1970) (quoting
 
 Chain Belt Co. v. United States,
 
 115 F.Supp. 701, 711-12, 127 Ct.Cl. 38, 54 (1953)). Moreover, “[t]he absence of Government tort liability has not been thought to bar contractual remedies on implied-in-fact contracts, even in those cases also having elements of a tort.”
 
 Hatzlachh Supply Co. v. United States,
 
 444 U.S. 460, 465, 100 S.Ct. 647, 650, 62 L.Ed.2d 614 (1980). Here, however, no contractual duty exists; negligent performance of a noncontractual duty cannot be the basis of a breach of contract claim. Rather, the negligent disclosure of information by the government, when the government had no
 
 contractual
 
 duty to supply such information may sound in tort.
 
 See United States v. Neustadt,
 
 366 U.S. 696, 706, 81 S.Ct. 1294, 1300, 6 L.Ed.2d 614 (1960) (“the duty to use due care in obtaining and communicating information upon which that party may reasonably be expected to rely in the conduct of his economic affairs, is * * * the traditional and commonly understood legal definition of the tort of negligent misrepresentation * * *.”)
 

 Finally, we disagree with the Claims Court’s determination that appellants were not correct parties to sue under the consent decree and subsequent alleged implied contracts. It is undisputed that appellants have a property right in the water to the extent of their beneficial use thereof.
 
 Fox v. Ickes, supra.
 
 The irrigation districts, which contracted with the Bureau, act as a surrogate for the aggregation of farmers. They use no water themselves. The farmers ultimately pay for all the services which the government supplies. It is clear that the appellants, owners of the property at issue, the water, also are intended third-party beneficiaries of the 1945 Consent Decree. Under the rules of the Claims Court “every action shall be prosecuted in the name of the real party in interest.” Claims Court R. 17(a). Here the farmers, owners of the water and beneficiaries of the irrigation projects, are the true parties in interest.
 

 Conclusion
 

 The judgment of the Claims Court granting appellee’s motion for summary judgment is affirmed.
 

 AFFIRMED.