**Michael J. KINNUCAN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 90–876C.**

United States Claims Court.

March 5, 1992.

Michael J. Kinnucan, pro se.

Anthony J. Ciccone, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, Director, and James M. Kinsella, Asst. Director, Washington, D.C., for defendant.  Michael D. Hipple, General Accounting Office, and Michael D. Russell, U.S. Coast Guard, of counsel.

## OPINION

ANDEWELT, Judge.

In this military pay action, plaintiff, Michael J. Kinnucan, appearing *pro se*, seeks reimbursement of travel and transportation expenses and related damages resulting from defendant's failure to pay these expenses after plaintiff's separation from the United States Coast Guard (Coast Guard). Plaintiff bases his claim on allegedly incorrect advice he received from the Coast Guard concerning his entitlement to travel and transportation allowances.  Plaintiff claims he followed the Coast Guard's advice and, as a result, failed to receive the payments to which he otherwise was entitled.  This action is presently before the court on defendant's motion to dismiss the instant action for lack of subject matter jurisdiction (RUSCC 12(b)(1)) and for failure to state a claim upon which relief can be granted (RUSCC 12(b)(4)).  For the reasons set forth below, defendant's motion to dismiss pursuant to RUSCC 12(b)(4) is granted.

### I.

Plaintiff bases his claim on the following facts which were taken from plaintiff's complaint and the attached documents.[1]

---

1. Documents accompanying a complaint are considered part of the complaint and, thus, may

Plaintiff enlisted in the Coast Guard on July 5, 1983, for four years of service. Plaintiff's enlistment contract identified his home of record as Grass Valley, California. On July 2, 1987, while on active duty in Hawaii, plaintiff was separated from service "for reason of expiration of term of enlistment." In a letter dated that same day, entitled "Separation Pay and Related Documents," plaintiff was told, *inter alia,* that "[a]ny questions concerning separation travel entitlements or settlement of travel claims should be coordinated with the local travel ACO [ (authorized certifying officer) ]."

Shortly thereafter, plaintiff visited the local ACO and was told that he had 12 months from the date of his separation to obtain a GTR (government travel request) to cover plaintiff's personal expenses for transportation and the shipping of his goods back to his home of record. In December 1987, plaintiff contacted the Coast Guard and was again told that he had one year from the date of separation to secure a GTR. On June 29, 1988, just less than one year after termination of his active service, plaintiff sought to obtain a GTR for his return to California on July 16, 1988. The Coast Guard denied plaintiff's request on the ground that plaintiff had only six months after his separation from service in which to utilize the GTR.

Plaintiff then requested an extension of the six-month limitation on the ground that he was attending the University of Hawaii for the 1987–88 school year, and his apartment lease did not expire until July 1, 1988. Plaintiff's request was denied. Plaintiff lacked funds to relocate to California and was unable to attend college for the fall 1988 semester. On September 28, 1988, after he had worked and acquired loans, plaintiff returned to California. Plaintiff's total cost for travel and shipping of his goods from Hawaii to California was $988.06. Plaintiff later requested reimbursement for this amount but the Coast Guard denied his request.

Shortly after arriving in California, plaintiff applied for admission to San Francisco State University (SFSU) for the spring 1989 semester and was accepted. However, because plaintiff missed the residence requirement date by eight days, he was denied eligibility for the lower tuition charged to in-state students for the subsequent fall 1989 term. Unable to attend college at the higher tuition rate, plaintiff withdrew from SFSU for the fall 1989 term.

Plaintiff alleges that defendant's failure to pay his travel expenses resulted in a one year delay in plaintiff receiving his college degree. In the instant action, plaintiff seeks not only to recover his travel and transportation expenses back to California, but also $20,300 to account for earnings that he alleges he lost as a result of the one-year delay in his receiving a college degree.

## II.

The Coast Guard's final interpretation of the controlling regulations is correct—the time period within which plaintiff was obliged to obtain a GTR was six months from the date of his separation. Congress authorized reimbursement of travel and transportation expenses to members of the uniformed services separated from active duty in 37 U.S.C. § 404(a), which provides, in pertinent part:

[U]nder regulations prescribed by the Secretaries concerned, a member of a uniformed service is entitled to travel and transportation allowances for travel performed or to be performed under orders . . .

\* \* \* \* \* \*

(3) upon separation from the service . . . from his last duty station to his home. . . .

In response to this statutory responsibility, the United States Department of Defense issued The Joint Federal Travel Regulations (JFTR). JFTR ¶ U5125–A.1 contains

---

be considered under RUSCC 12(b)(4) without converting such a motion to a motion for summary judgment under RUSCC 56. 2A James W.

Moore et al., *Moore's Federal Practice* ¶ 12.07[2.–5] at 12–68 n. 17 (2d ed. 1991).

a general entitlement, upon separation, to an allowance for personal travel back to the home of record. But JFTR ¶ U5125–D requires that, absent an extension, the travel must be completed within 181 days of separation. JFTR ¶ U5125–D provides:

> D. *Time Limitation.* Except when additional time is authorized or approved, travel must be completed before the 181st day following separation from the Service or relief from active duty for entitlement to exist under this paragraph. If completion of travel before the 181st day would impose a hardship on the separated member, an extension of the time limit may be authorized or approved for a specific additional period of time by the Secretary of the Service concerned or the designated representative.

The wording of this section, including the tense of the verb "impose," requires that a service member apply for any hardship extension within the 181–day period ("*If* completion of travel before the 181st day *would impose* a hardship ... *an extension* ... may be authorized" (emphasis added)). In addition, the wording makes the Service's grant of any extension discretionary even if travel within the 181–day period would in fact impose some hardship ("If completion of travel ... would impose a hardship ... an extension of time *may* be authorized" (emphasis added)).

Next, JFTR ¶ U5360–A generally entitles separated service members to an allowance for transportation of household goods back to their home of record, but JFTR ¶ U5360–G contains a 181–day limitation on filing an application for such shipment, without any provision for an extension of the filing deadline. JFTR ¶ U5360–G provides:

> G. *Time Limit.* Entitlement to transportation under this paragraph will *terminate on the 181st day* following separation ... *unless* a written application for shipment has been turned in to a transportation officer or a designated

representative *before* the expiration of the 180th day. When an application for shipment has been made within 180 days, the [household goods] must be turned over ... for shipment as soon as possible.... When turning over the [household goods] as soon as possible would impose a hardship ... an extension of the time limit *may* be authorized.

(Emphasis added.) Finally, JFTR ¶ U5457 provides for shipment of a privately-owned vehicle. Like JFTR ¶ U5360–G, this provision also appears to require application prior to the expiration of the 180th day following separation and to make the granting of an extension discretionary ("*Extension may* be authorized ... [if shipment] within that initial timeframe *would* be a hardship.") [2]

### III.

■ Plaintiff does not allege in his complaint that he complied with the above quoted JFTR provisions. Plaintiff does not contend that within 181 days after separation he either applied for travel and transportation allowances, completed travel, or requested or secured an extension. In effect, plaintiff places the blame for his failure to comply with the regulations on the alleged false information provided by the ACO. Plaintiff contends that the ACO's incorrect advice constitutes a breach of contract and is the proper subject of a suit in this court.

As to the breach of contract claim, while there is a written contract between plaintiff and the Coast Guard—the enlistment contract—the only provision in that contract that creates a Coast Guard obligation to pay funds to plaintiff is the statement that plaintiff entered the contract "[f]or and in consideration of the pay or wages due to the ratings which may from time to time be assigned to [him] during the continuance of [his] service." But the "pay or wages due" are found in the pertinent stat-

---

**2.** JFTR grants certain categories of service members additional time to complete their post-separation return travel, but plaintiff does not qualify under those categories. For example, an extension is available for education reasons,

but it applies only to service members who have either served eight years of continuous active duty or retired based on disability. (*See* JFTR ¶ U5365–E and ¶ U5365–A.)

utes and regulations. As cited above, the statutes and regulations do not entitle plaintiff to pay or wages for travel and transportation expenses because plaintiff did not complete his travel and shipping of goods or apply for an extension within the time period set forth in the regulations.

Plaintiff contends that the Coast Guard's letter of July 2, 1987, inviting plaintiff to address any questions to the ACO, should be interpreted as a part of this enlistment contract and to constitute a promise by the Coast Guard that the ACO would provide accurate information in response to any questions. But there is no provision in the enlistment contract that obliges the Coast Guard accurately to explain allowances available under the applicable regulations to separated service members. Providing inaccurate advice, as offensive and prejudicial as it may be, is simply not a violation of any specific obligation undertaken in the enlistment contract.

■ In the alternative, plaintiff seems to suggest that the July 2, 1987, letter should be viewed as an offering of an amendment to the enlistment contract, or an implied-in-fact contract in its own right. Plaintiff contends that in the letter, the Coast Guard made an implicit offer to plaintiff that the ACO would provide accurate information, and, in turn, plaintiff manifested an acceptance of that offer by consulting with the ACO and relying upon the advice given. But an implied government contract involves the same requirements as any other contract—an unequivocal offer and acceptance and consideration passing between the parties. *See, e.g., Fincke v. United States,* 230 Ct.Cl. 233, 244, 675 F.2d 289, 295 (1982); *Cutler–Hammer, Inc. v. United States,* 194 Ct.Cl. 788, 794–96, 441 F.2d 1179, 1182–83 (1971). Plaintiff has not presented the prerequisites for such an agreement. Plaintiff relies on the statement in the July 2, 1987, letter that "questions concerning travel entitlements or . . . claims should be coordinated with the local travel ACO." But this statement cannot reasonably be interpreted to represent an unequivocal offer by the Coast Guard to

enter an agreement that guaranteed the correctness of the ACO's advice. Moreover, the complaint does not identify, and there does not appear to be, any consideration passing from plaintiff to the Coast Guard when plaintiff accepted the "offer" to consult with the ACO.

The strength of plaintiff's claim herein lies not in his ability to satisfy the technical requirements for contract formation, but rather in basic notions of equity and fairness. If the facts are as alleged, plaintiff was treated in a terribly unfair manner. He was told to consult the ACO on any questions about travel allowances, did what he was told to do, received advice from the ACO, and relied upon that advice. Yet, the net result was that plaintiff was damaged financially. The Coast Guard certainly would seem to have a moral, if not legal, obligation to provide correct advice to service members upon their separation from service.

■ Plaintiff does present an alternative argument that would place these equities before the court. Plaintiff contends that the court should apply the doctrine of equitable estoppel against the Coast Guard and, as a result, defendant should be estopped from denying the correctness of the ACO's original statements as to the scope of plaintiff's rights. But in *OPM v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990), the Supreme Court concluded that equitable estoppel does not apply against the government in situations where application of estoppel would result in the payment of money that was not authorized by federal statute. Herein, the pertinent statute, 37 U.S.C. § 404, authorizes the payment of funds for travel and transportation only when the payment is pursuant to regulations prescribed by the Secretary of the service involved ("under regulations prescribed by the Secretaries concerned, a member of uniform service is entitled to travel and transportation allowances . . ."). Here, as explained above, the specific provisions of the JFTR do not permit the payment of funds.[3] Hence, there is

---

3. Indeed, a six-month limitation on payment for ▇▇▇  transportation of household goods not only ap-

no congressional authorization for the requested payments and, under *OPM v. Richmond,* equitable estoppel cannot apply against the United States.[4]

## IV.

When assessing whether a complaint states a claim upon which relief can be granted, as required in RUSCC 12(b)(4), it is appropriate to construe the words of the complaint liberally with all reasonable inferences made in favor of the nonmoving party. 2A James W. Moore et al., *Moore's Federal Practice* ¶ 12.07[2.–5] at 12–63 (2d ed. 1991). This is especially true where, as here, the complaint is made *pro se.* "The court should deny a motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.*

*Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Here, assuming all of the facts in the complaint are true, plaintiff suffered financial injury by relying on advice given by Coast Guard personnel. But not all financial injuries caused by government personnel result in sound legal claims against the government within this court's Tucker Act jurisdiction (28 U.S.C. § 1491). *City of Manassas Park v. United States,* 224 Ct.Cl. 515, 633 F.2d 181, *cert. denied,* 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980). In the instant situation, though plaintiff may have been financially injured, plaintiff has not articulated any supportable legal claim that can be brought against the United States in this court.[5] Plaintiff cannot state a proper claim for breach of contract and the doctrine of equitable estoppel does not apply.[6] Since the crucial facts upon

---

pears in the regulations but also is specifically contained in 37 U.S.C. § 406(b) which provides:

(1)(A) Except as provided in paragraph (2) of this subsection, ... a member is entitled to transportation ... of baggage and household effects, or reimbursement therefor, within such weight allowances measured by the Secretaries concerned....

\* \* \* \* \* \*

(2) The transportation and allowances authorized under paragraph (1) of this subsection may be paid or provided to a member upon his separation from the service or release from active duty *only if* the member *applies* for the transportation and allowances *not later than 180 days* after the date of his separation or release from active duty.

(Emphasis added.) Despite plaintiff's assertions, this statute and the pertinent JFTR provisions cannot be "fairly interpreted" to mandate the payment of travel and transportation expenses where plaintiff failed to satisfy the requirements of the applicable regulations.

4. Plaintiff contends that barring a claim of equitable estoppel against the government is unconstitutional because it violates the due process and just compensation clauses of the fifth amendment. But plaintiff's entitlement to travel and transportation allowances is the product of statute and regulations. As explained above, plaintiff has no entitlement to allowances herein because he did not comply with the pertinent 181–day time limitations. Hence, there was no "property" right of which to be deprived or to be taken. In any event, the Supreme Court is the final arbiter on issues of proper interpretation of the Constitution and its pronouncement as to the applicability of eq-

uitable estoppel in *OPM v. Richmond* is binding on this court.

5. *See H.F. Allen Orchards v. United States,* 749 F.2d 1571 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985) (mistaken representations by a government official where there is no contractual duty to supply correct information does not sound in contract; to the extent it may sound in tort, the Claims Court is without jurisdiction). Government obligations that rest in equity rather than law can properly be addressed by this court, but only when referred to the court by Congress pursuant to 28 U.S.C. §§ 1492 and 2509.

6. Even if plaintiff did properly state a claim for breach of contract, it does not appear that plaintiff could possibly be successful in his efforts to secure the damages he seeks relating to the delay in receipt of a college degree. Proper damages for breach of contract are those that are reasonably foreseeable to the parties at the time the contract was entered and that were the proximate result of the breach of contract. *Olin Jones Sand Co. v. United States,* 225 Ct.Cl. 741, 742 (1980). "They do not include damages that remotely or consequentially resulted from the breach, *i.e.,* damages that were too remote or speculative to qualify as compensable damages." *Solar Turbines, Inc. v. United States,* 16 Cl.Ct. 304, 316 (1989). It would not appear possible for plaintiff to demonstrate that it was reasonably foreseeable when the Coast Guard entered the enlistment contract that a failure to pay travel and transportation expenses would result in a one-year delay in plaintiff's securing a college degree. These effects appear too remote and speculative to support any award. Thus,

which plaintiff relies are clear, it does not appear that plaintiff possibly could cure the defect by amending his complaint.[7]

## CONCLUSION

For the reasons set forth above, defendant's motion under RUSCC 12(b)(4) is granted and the Clerk of the Court shall dismiss the complaint. No Costs.

IT IS SO ORDERED.

---

even assuming a satisfactory breach of contract were stated, these claims would likely fall to a proper summary judgment motion. *Id.* at 317.

7. Defendant also alleges that the complaint should be dismissed for lack of jurisdiction. But the complaint makes allegations of breach of contract and fifth amendment taking. *See* note 4, *supra.* The court has jurisdiction to entertain such claims under the Tucker Act, 28

U.S.C. § 1491(a). The problem here is the complaint fails properly to state a claim under either of these theories. In this situation, the complaint should be dismissed under RUSCC 12(b)(4) for failure to state a claim, rather than under RUSCC 12(b)(1) for lack of jurisdiction. *See Metzger, Shadyac & Schwartz v. United States,* 10 Cl.Ct. 107, 110 (1986).