Antonio C. GAMBINO, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 98–787C.

United States Court of Federal Claims.

Nov. 22, 1999.

William L. Boyd, Boyd & Boyd, Trenton, NJ, for plaintiff.

Lisa B. Donis, Washington, DC, with whom was Acting Assistant Attorney General David W. Ogden, for defendant.

## ORDER

MILLER, Judge.

This case is before the court on defendant's motion for summary judgment, which turns on whether a genuine dispute exists as to the existence of a contract between the Federal Bureau of Investigation and an informant who asserts nonpayment for services. Argument is deemed unnecessary.

## FACTS

The following facts are undisputed, unless otherwise noted. In July 1992 the Federal Bureau of Investigation (the "FBI") opened Antonio C. Gambino ("plaintiff") as a confidential informant ("CI"). The FBI gave plaintiff the code name "NOID." From June 1992, until May 10, 1994, plaintiff, without the benefit of a contractual relationship with the FBI, provided intelligence information regarding domestic and foreign criminal operators.

On September 26, 1993, at the FBI's request, plaintiff signed a lease which opened Truck One International, an undercover gambling and stolen goods buying operation in Trenton, New Jersey. Unhappy with the

sporadic payment for his services as a CI, plaintiff requested to be placed on the FBI payroll in March 1994. His request was granted, and the parties executed a contract dated May 10, 1994. The contract stipulated that, in the discretion of the FBI, plaintiff could be paid up to $1,500.00 per month for services performed in operating the undercover stolen goods buying operation. According to defendant, plaintiff also became a cooperative witness.[1]

The FBI deemed the stolen goods operation a "Group II" investigation, signifying that it must be completed within six months, which was not reflected in the contract. The contract was silent as to a specific termination date, but contemplated an extension contingent upon congressional approval.

The operation was extended for an additional six months through April 1995. Plaintiff was paid the full $1,500.00 per month from May 1994 through April 1995. At the end of April, the FBI informed plaintiff that Truck One International was to be shut down and relocated because the investigation had been compromised. Plaintiff contends that the FBI then instructed him to establish a new undercover gambling and stolen goods buying operation less than 13 miles away in Florence, New Jersey. Plaintiff was given $3,300.00 to lease space in Florence and to establish the new operation.

Plaintiff asserts that, after the lease for the Florence operation was signed on May 7, 1995, the FBI opened for business at the end of August 1995. Because the FBI did not ask for an extension at the time Truck One International was shut down, defendant contends that the May 10, 1994 contract was terminated and that the $3,300.00 paid to plaintiff covered personal relocation expenses. Plaintiff denies this contention. Defendant maintains that any useful information that the FBI received from plaintiff, subsequent to the termination, was not furnished in accordance with a contract. For more than a year after the contract was terminated, however, the FBI paid plaintiff a

---

1. A CI provides information on a confidential basis, but is not expected to testify in court; a cooperative witness provides confidential information and operational assistance and may or may not testify in court.

total of $25,031.00 in various amounts for additional services and expenses.

Plaintiff claims that he never received any notice that the FBI terminated the contract as of April 30, 1995, and that the receipts he signed after this point were for expenses only. Plaintiff's position is that he fully performed his contractual duties until March 19, 1997, at which time he terminated the contract and brought suit to recover $32,436.99 for compensation based on $1,500.00 per month ($49.32 per diem) for 21 months and 19 days.[2]

## DISCUSSION

Summary judgment is appropriate only when the moving party is entitled to judgment as a matter of law. RCFC 56(c) provides, in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Moreover, no disputes can be present concerning material facts that may significantly affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute concerning a material fact exists when the evidence presented would permit a reasonable jury to find in favor of the non-movant. *See id.* at 248–49, 106 S.Ct. 2505. The moving party bears the burden of demonstrating the absence of genuine disputes over material facts. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In its analysis the court may neither make credibility determinations nor weigh evidence and seek to determine the truth of the matter. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.; see H.F. Allen Orchards v. United States,* 749 F.2d 1571,

1574 (Fed.Cir.1984) (noting that non-moving party shall "receive the benefit of all applicable presumptions, inferences, and intendments"). Indeed, because of the procedural posture of a case being considered on a motion for summary judgment,

[t]here is no requirement that the trial judge make findings of fact. The inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. 2505 (footnote omitted). Although summary judgment is designed " 'to secure the just, speedy and inexpensive determination of every action,' " *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1), a trial court may deny summary judgment when "there is reason to believe that the better course would be to proceed to a full trial." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

Key to ruling on defendant's motion is this contract language which provides, in pertinent part:

2. The FBI will reimburse GAMBINO for expenses incurred by him which are deemed reasonable and necessary for the maintenance of the undercover operation and which are in furtherance of the investigation. No expenses shall be incurred without first obtaining authorization from a designated FBI official. The FBI reserves the right to direct GAMBINO not to incur expenses which the FBI deems not to be in furtherance of its investigative goals.

3. In return for his cooperation the FBI will provide GAMBINO with compensation, on a cash on delivery basis, in an amount of up to $1,500.00 per month, with the amount of such payments at the discretion of the FBI.

. . . .

14. This agreement shall commence on the date of acceptance by GAMBINO as

---

**2.** This figure appears to be miscalculated based on the correct number of months. From May 1, 1995, through March 19, 1997 (22 months × $1,500.00 + 19 days × $49.32), the correct calculation should be $33,937.08.

signified by his signature, and shall continue as long as the FBI deems that GAMBINO's services are required. It[s] extension beyond 9/30/94 is contingent upon Congressional approval of the necessary funding. It may be terminated at any time by either party by deliverance of written notice to terminate.

Defendant's scenario is that the FBI shut down the operation at the end of April 1995 and provided plaintiff with relocation expenses. Defendant characterizes the subsequent relationship with plaintiff as providing compensation for his services and expenses, in exchange for additional useful information. However, defendant, as the moving party, has failed to demonstrate the absence of a genuine dispute with respect to several material facts.

The contract does not require that any extension be in writing, and plaintiff avers that his case agent extended it orally. For his part, the case agent avers that the contract was not extended because the FBI terminated it when the operation was shut down. Plaintiff argues that because he did not receive the required written notification indicating the FBI's election to terminate the contract as of April 30, 1995, he should receive compensation up to March 19, 1997— the date on which he terminated the contract.

Although defendant may be correct that the FBI paid for a relocation, no less than $3,900.00 was used to "relocate" plaintiff 12.2 miles away, to another location in New Jersey. Defendant's relocation scenario appears implausible, if risible. In any event, defendant agrees with plaintiff that some part of the payments that plaintiff received was for information.

The nature of compensation between April 25, 1995, and July 24, 1996, is in question. Defendant contends that of the total $25,031.16 given to plaintiff during that time period, $12,715.00 was for services and $12,316.16, for expenses. Plaintiff avers that the total $25,031.16 was for expenses only. Defendant has provided receipts signed by plaintiff acknowledging receipt of expenses. Plaintiff counters this evidence, as follows:

27. The method that I was paid my expenses was unusual. Riggins had me sign receipts under my code name "No I.D.", each time he paid me for operation expenses. Although I was required to give cash receipts for all of my out of pocket expenses to Riggins, he had me sign some of his receipts that were blank and others which indicated that "no receipts are available."

Declaration of Antonio C. Gambino, ¶ 27, Sept. 13, 1999.

The express language of the contract states that plaintiff's compensation would be up to $1,500.00 per month. However, defendant did not seek judgment on the basis that the contract did not entitle plaintiff to the maximum per month and that payment of any amount for services would have compensated plaintiff per the contract. Case law addresses this subject, and defendant did not cite it. Although it stretches credulity that plaintiff, for more than a year during which the FBI failed to make payments per the contract, accepted money which he now asserts was only reimbursement for expenses while he surely demanded money for services, the unlikelihood of this sequence of events cannot be resolved in defendant's favor on a motion for summary judgment.

In the absence of defendant's having shown that it is entitled to summary judgment in its favor, plaintiff's explanation must receive the benefit of all applicable presumptions and inferences.

## CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion for summary judgment is denied without prejudice to renewal on another ground.

2. The parties shall file a Joint Status Report by December 17, 1999, proposing a schedule for pretrial proceedings and trial.