J. Bernard BRANNAN, Jr., as Trustee in Bankruptcy for C & F Oil, Inc., for the United States Bankruptcy Court, Middle District of Alabama

v.

The UNITED STATES.

No. 99–84C.

United States Claims Court.

Feb. 12, 1985.

**400**

C. Knox McLaney, III, Montgomery, Ala., for plaintiff; J. Doyle Fuller and Lewis B. Hickman, Jr., Montgomery, Ala., of counsel.

George M. Beasley, III, Washington, D.C., with whom were Acting Asst. Atty. Gen. Richard K. Willard and David M. Cohen, Washington, D.C., for defendant.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WHITE, Senior Judge.

The plaintiff, J. Bernard Brannan, Jr., is the Trustee in Bankruptcy for a corporation known as C & F Oil, Inc. (C & F Oil). He sues in the present action because of the failure of the Farmers Home Administration (FmHA), U.S. Department of Agriculture, to consummate a Conditional Commitment for Guarantee by guaranteeing a loan in the amount of $4,970,000 which the First Citizens Bank of Luverne, Alabama, had agreed to make to C & F Oil. The purpose of the proposed loan was to provide funds for the construction by C & F

Oil of an oil reclamation facility, or re-refinery, in Lowndes County, Alabama.

The plaintiff alleges in the complaint that, in reliance on the FmHA's conditional commitment, C & F Oil entered into construction contracts with various contractors for the construction of the proposed oil reclamation facility, and actually commenced and partially completed the construction of the facility, thereby incurring liabilities of approximately $3,000,000 to various creditors; that the FmHA, when called upon to consummate the loan transaction under the conditional commitment, failed and refused to do so; and that, as a result of such failure by the FmHA, C & F Oil "has been subjected to an Involuntarily [sic] Petition in Bankruptcy, has been unable to meet its credit obligations, and has been unable to complete construction of its proposed facility in Lowndes County, Alabama, thereby incurring tremendous liabilities, obligations and losses, including lost profits."

The case comes before the court on the defendant's motion for summary judgment. The defendant's brief in support of the pending motion indicates that the primary reason why the defendant believes the plaintiff is not entitled to recover is that (according to the defendant) C & F Oil was not in privity of contract with the United States.

### The Facts

It appears from the papers filed with the court that there is no controversy regarding the facts outlined in this part of the opinion.

Sometime after December 12, 1979, C & F Oil, as the prospective "Borrower," and the Pike County Bank of Troy, Alabama, as the prospective "Lender," submitted to the Alabama State Office of the FmHA an Application for Loan and Guarantee in connection with a proposed loan in the amount of $4,970,000, to be made by the Pike County Bank to C & F Oil in order to finance the development by C & F Oil of an oil reclamation facility in Lowndes County, Alabama. The application requested that the

FmHA guarantee the repayment of the proposed loan, to the extent of 90 percent, pursuant to the FmHA Business and Industrial Loan Programs, as authorized by Subpart E of Part 1980 of 7 C.F.R. and by 7 U.S.C. § 1932 (1982).

Subsequently, with the approval of the FmHA national headquarters, the First Citizens Bank of Luverne, Alabama, was substituted for the Pike County Bank as the prospective lender on the Application for Loan and Guarantee.

On April 28, 1980, the Acting State Director of the FmHA for Alabama, acting on behalf of the United States, issued on Form FmHA 449–14 to the First Citizens Bank, as lender, a Conditional Commitment for Guarantee on a loan in the principal amount of $4,970,000, to be made by the lender to C & F Oil. The conditional commitment stated in part that "the United States of America acting through the Farmers Home Administration (FmHA) hereby agrees that, in accordance with applicable provisions of the FmHA regulations * * * and related forms, it will execute Form(s) FmHA 449–34, 'Loan Note Guarantee' subject to the conditions and requirements specified in said regulations and below." This was followed by several pages containing a number of conditions that must be met before the commitment would become effective.

The document expressly stated that "[t]he loan note guarantee will be issued after the FmHA is advised by the lender that the conditions in this conditional commitment * * * [and in pertinent regulations] have been complied with."

The Conditional Commitment for Guarantee also included the following statement:

This conditional commitment will expire on June 1, 1982 unless the time is extended in writing by FmHA, or upon the Lender's earlier notification to FmHA that it does not desire to obtain an FmHA guarantee.

Under the date of February 9, 1981, C & F Oil wrote a letter to Mrs. Elizabeth Wright, then FmHA State Director for Alabama, asking "that an exception be made to the requirement of 7 C.F.R. § 1980.-60(a)(2) that Lender certify to FmHA that all planned property acquisition be completed * * * before FmHA issumes [sic] its Loan Note Guarantee * * *." The letter went on to say that it was necessary for certain specified machinery items, equipment, and other specialized items be ordered in advance of delivery; and that the issuance of the Loan Note Guarantee in advance of delivery of these items would allow C & F Oil to complete its project and would save C & F Oil a substantial amount in interest expense, etc.

In connection with C & F Oil's request of February 9, 1981, for an exception to 7 C.F.R. § 1980.60(a)(2), this regulation provided in part as follows:

(a) *Lender certification.* Form FmHA 449–34 will not be issued until the lender certifies to FmHA that:

\* \* \* \* \* \*

(2) All planned property acquisition has been completed, all development has been substantially completed in accordance with plans and specifications, and all costs have not exceeded the amounts approved by the lender and FmHA.

It was provided in 7 C.F.R. § 1980.454(c), however, that an FmHA State Director might authorize an exception to the provisions of the regulation just quoted "when machinery, equipment, or other specialized items need to be ordered in advance of future delivery."

Mrs. Wright, then the Alabama State Director of FmHA, in response to the request of C & F Oil for an exception to 7 C.F.R. § 1980.60(a)(2), wrote a letter to the First Citizens Bank under the date of February 13, 1981. In this letter, Mrs. Wright agreed to make the exception requested by C & F Oil, and said that the FmHA would issue the Loan Note Guarantee without requiring the previous acquisition of the items mentioned by C & F Oil in its request.

C & F Oil also wrote another letter to Mrs. Wright on February 9, 1981. In this letter, C & F Oil requested that Mrs.

Wright approve a cost overrun in the amount of $490,000 on the oil reclamation facility, which would increase the cost of the project to $5,460,000, with 90 percent of the total amount to be guaranteed by FmHA. C & F Oil stated that the additional funds would be used to provide additional pollution control equipment.

In connection with C & F Oil's request for the approval of a cost overrun in the amount of $490,000, one of the conditions set out in the Conditional Commitment for Guarantee provided as follows:

Cost overruns, if any, will be provided for by additional cash injection by the C & F Oil stockholders. A proposal may be made for additional guaranteed loan to assist in construction costs should cost overruns occur; however, this is not a commitment that such request would be guaranteed.

Also pertinent to the cost overrun request by C & F Oil is the provision in 7 C.F.R. § 1980.454–A–3 to the effect that "State Directors may approve cost overruns for projects in any amount or percentage within their loan approval authority and not to exceed 10 percent on loan amounts between $1 million and $10 million."

The letter from C & F Oil regarding the cost overrun was answered by Mrs. Wright in the form of a letter dated February 13, 1981, and addressed to the First Citizens Bank. Mrs. Wright approved the cost overrun in the amount of $490,000, and stated that the increased cost of the project, $5,460,000, would be guaranteed by FmHA to the extent of 90 percent.

After reviewing the exception to 7 C.F.R. § 1980.60(a) granted by Mrs. Wright on February 13, 1981, the Assistant Administrator of the FmHA for Business and Industry overruled the State Director; and, in a communication dated February 19, 1981, advised Mrs. Wright in part as follows:

Our regulations are very specific to prohibit the guarantee of projects under construction. In our opinion, this is a major construction effort, not the procurement of a specialized item of equipment, and, therefore, a loan note guarantee cannot be issued until the facility is completed in accordance with the specifications and costs previously approved by FmHA.

Thereafter, a subsequent FmHA State Director informed the First Citizens Bank that, on the basis of advice received from FmHA national headquarters, the Loan Note Guarantee could not be issued before the completion of all property acquisitions, and that the former State Director's action in granting an exception to this requirement was unauthorized.

The same letter from the then FmHA State Director to the First Citizens Bank also referred to Mrs. Wright's letter of February 13, 1981, to the bank agreeing to increase the loan guarantee in order to cover 90 percent of an additional cost item totaling $490,000 for pollution control equipment. Acting on advice from FmHA national headquarters, the new State Director said that the $490,000 item was not a "cost overrun," but an evident increase resulting from a deficient preliminary construction cost estimate made prior to the construction contract negotiations; and that the increase in the loan guarantee promised by Mrs. Wright was unauthorized.

Plans and specifications for C & F Oil's proposed oil reclamation facility were submitted to the FmHA on June 3, 1981. In this connection, one of the conditions stated in the Conditional Commitment for Guarantee was that construction must be "substantially completed in accordance with approved plans and specifications prior to issuance of the guarantee." On June 4, 1981, the FmHA Alabama State Office returned the plans and specifications to the First Citizens Bank, with certain listed requirements that should be met in order that the plans and specifications might be forwarded to the FmHA national office for review. However, the plans and specifications were never returned to the FmHA for review and approval.

Under its terms, the Conditional Commitment for Guarantee expired on June 1, 1982. As of that time, the oil reclamation facility had not been substantially completed, and no loan guarantee had been executed by the FmHA.

On June 7, 1982, the First Citizens Bank wrote a letter to the FmHA State Director for Alabama, stating in part as follows:

We have been informed by C & F Oil, Inc. that the Farmers Home Administration commitment to C & F Oil, Inc. terminated on June 1, 1982. We have also been told that as a result of that termination, our bank is no longer considered the lead lender in this project. We would very much appreciate your verification of the above.

The Alabama State Director, in a response dated June 14, 1982, informed the First Citizens Bank that "this is to confirm that the subject conditional commitment for which you were the lead lender did expire on June 1, 1982, and is therefore considered terminated by this agency."

### Privity of Contract

 It is axiomatic in the law of government contracts, as developed by this court's predecessor, the United States Court of Claims, in numerous cases under section 1 of the so-called Tucker Act (24 Stat. 505 (1887); now codified as 28 U.S.C. § 1491(a)(1) (1982)), that a person seeking to recover on a contract claim against the United States must show (*inter alia*) the existence of privity of contract between the claimant and the United States. *Cf., e.g.,* *H. Herfurth, Jr., Inc. v. United States,* 89 Ct.Cl. 122, 127 (1939); *Petrin v. United States,* 90 Ct.Cl. 670, 673 (1940); *Kanarek v. United States,* 161 Ct.Cl. 37, 40, 314 F.2d 802, 803 (1963), *cert denied,* 379 U.S. 838, 85 S.Ct. 74, 13 L.Ed.2d 45 (1964); *Bogart v. United States,* 209 Ct.Cl. 208, 213–14, 531 F.2d 988, 991 (1976); *Centron Corp. v. United States,* 218 Ct.Cl. 1, 7, 585 F.2d 982, 985–86 (1978). The decisions of the Court of Claims are binding upon this court (General Order No. 1, 1 Cl.Ct. XXI (1982)); and the principle of government contract law

just stated is applied by this court (*Descon System Ltd. v. United States,* 6 Cl.Ct. 410, 414 (1984); *Baudier Marine Electronics, Sales and Service, Inc. v. United States,* 6 Cl.Ct. 246, 249 (1984)).

 Privity of contract was deemed by the Court of Claims to be essential because, insofar as contract claims were concerned, section 1 of the Tucker Act conferred upon that court "jurisdiction to hear and determine * * * claims founded * * * upon any contract, expressed or implied, *with the Government of the United States*" (emphasis supplied). Similarly, the current version of the governing legislation, 28 U.S.C. § 1491(a)(1), confers upon this court "jurisdiction to render judgment founded * * * upon any express or implied contract *with the United States*" (emphasis supplied). Such statutory language represented in 1887, and now represents, a waiver by the United States of the Federal Government's sovereign immunity against suit; and a waiver of sovereign immunity must be strictly construed by the courts. *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969); *Connolly v. United States,* 1 Cl.Ct. 312, 314, 554 F.Supp. 1250, 1252 (1982).

In the present case, it is clear from the undisputed facts that C & F Oil did not have any express contract with the United States. The Conditional Commitment for Guarantee was issued by the FmHA Acting State Director for Alabama to the First Citizens Bank, and not to C & F Oil; the promise by the then FmHA State Director that an exception to 7 C.F.R. § 1980.-60(a)(2) would be granted, and the Loan Note Guarantee would be issued without requiring the previous acquisition of certain property items desired by C & F Oil for the oil reclamation facility, was made to the First Citizens Bank, and not to C & F Oil; and the promise by the then FmHA State Director to increase the amount of the guarantee in order to cover a cost overrun of $490,000 was made to the First Citizens Bank, and not to C & F Oil. Thus, none of the promises by FmHA personnel

on which the plaintiff relies was made to C & F Oil.

■ Actually, the undisputed facts in this case establish that not even the First Citizens Bank ever had an express contract with the United States. The Conditional Commitment for Guarantee was, as the name indicated, merely a commitment on the part of the FmHA, representing the United States, to guarantee 90 percent of a future loan *provided* certain conditions were met. The specified conditions were not met before the conditional commitment expired under its terms on June 1, 1982. Therefore, the conditional commitment never ripened into an express contract between the United States and the First Citizens Bank.

■ It should also be noted that if the Conditional Commitment for Guarantee had ripened into a contract, and if the United States had breached the contract by refusing to guarantee the proposed loan from the First Citizens Bank to C & F Oil, only the First Citizens Bank—and not C & F Oil—would have had standing to sue on the breach. Although C & F Oil, under the circumstances described, would have been a proposed beneficiary of the contract between the Government and the First Citizens Bank, there was nothing in the language of the pertinent documents—the Application for Loan and Guarantee, the Conditional Commitment for Guarantee, and the other papers before the court—showing an intent that C & F Oil should be entitled to compensation in the event of a breach of the contract by the Government. *Cf. Baudier Marine Electronics, Sales and Service, Inc. v. United States, supra,* 6 Cl.Ct. at 249.

■ The relevant jurisdictional legislation granted to the Court of Claims, and now grants to this court, not only the authority to adjudicate claims based upon express contracts with the United States, but also the authority to render judgment on claims that are founded upon implied contracts with the United States. This juris-dictional grant covers only claims arising out of contracts with the Government that are implied in fact, and does not extend to the sort of contracts that are implied in law as between private persons because of equitable considerations. *United States v. Minnesota Mutual Investment Co.,* 271 U.S. 212, 217, 46 S.Ct. 501, 502, 70 L.Ed. 911 (1926); *Merritt v. United States,* 267 U.S. 338, 340–41, 45 S.Ct. 278, 279, 69 L.Ed. 643 (1925); *Tree Farm Development Corp. v. United States,* 218 Ct.Cl. 308, 316–17, 585 F.2d 493, 498 (1978).

■ An implied-in-fact contract is a real contract in the usual sense, although the parties involved may not have used specific words of agreement. *See J.C. Pitman & Sons, Inc. v. United States,* 161 Ct.Cl. 701, 704–05, 317 F.2d 366, 368 (1963). In order to determine the existence of an implied-in-fact contract between parties, the conduct of the parties and the other circumstances surrounding the transaction must be sufficient to warrant the inference, as a fact, that there has been a meeting of the minds between the parties, involving a definitive offer by one party and an unequivocal acceptance by the other. *Cf. Singleton v. United States,* 6 Cl.Ct. 156, 165–66 (1984).

Neither the plaintiff's complaint nor any of the other material before the court in the present case outlines any circumstances from which an implied-in-fact contract could be found to exist between the United States, represented by the FmHA, and C & F Oil.

■ For example, even if the then FmHA State Director had promised C & F Oil directly (rather than promising the First Citizens Bank) that the Loan Note Guarantee would be issued without requiring the previous acquisition of the property items mentioned in C & F Oil's request for an exception to 7 C.F.R. § 1980.60(a)(2), it would be pertinent to note that the State Director did not promise to issue the Loan Note Guarantee irrespective of whether

other applicable conditions were met. Moreover, there is nothing in the record to show that there was any consideration for the State Director's promise; and, of course, it is basic that consideration is an essential element of any valid contract, whether express or implied in fact.

Similarly, even if the then FmHA State Director's promise to approve a purported cost overrun in the amount of $490,000 had been made directly to C & F Oil, the same sort of reasoning outlined in the immediately preceding paragraph would necessarily lead to the conclusion that no implied-in-fact contract between the United States and C & F Oil resulted from the particular transaction. The State Director did not promise to issue the Loan Note Guarantee for the increased amount without regard to all other relevant requirements; and, furthermore, it is not shown that C & F Oil actually purchased additional oil pollution equipment in reliance on the State Director's promise.

It follows from the previous discussion that C & F Oil did not have privity of contract with the United States, either on the basis of an express contract or a contract implied in fact.

This determination makes it unnecessary to discuss the other grounds on which the defendant's motion for summary judgment is based.

### Conclusion

For the reasons stated in the opinion, the court concludes that there is no genuine issue as to any material fact essential to the disposition of the case, that the plaintiff is not entitled to recover, and that the defendant is entitled to a judgment as a matter of law.

The defendant's motion for summary judgment is therefore granted.

The clerk is directed to dismiss the complaint.

IT IS SO ORDERED.