Charles MORGAN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 141–86C.

United States Claims Court.

April 22, 1987.

---

Scott Daniel, Murfreesboro, Tenn., for plaintiff.

Paul J. Ehlenbach, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

MOODY R. TIDWELL, III, Judge:

This is an action for money damages brought by Charles Morgan, a Tennessee dairy farmer, pursuant to the Tucker Act, 28 U.S.C. § 1491 (1982). Mr. Morgan alleges that the Department of Agriculture arbitrarily, capriciously and unreasonably denied his application to participate in the Milk Diversion Program authorized by the Dairy and Tobacco Adjustment Act of 1983, thereby abusing its discretion, violating his Fifth Amendment right to due process and equal protection of the laws and breaching a contract of unspecified origin.

## FACTS

The Milk Diversion Program under which Mr. Morgan seeks relief is a price program administered by the Department of Agriculture. 7 U.S.C. § 1446(d) (Supp. I 1983). The goal of the program is to reduce the total amount of milk produced in the United States in an effort to stabilize market prices. *Id.* at § 1446(d)(2). Under the program, the Commodity Credit Corporation (CCC), acting for the Secretary of Agriculture, enters into contracts with eligible milk producers. *Id.* at § 1446(d)(2)(B). The parties to the contract develop a plan describing the amount of reduced production for the contract period. *Id.* at § 1446(d)(3)(A). The CCC then provides price support payments to the producer, in essence paying for the milk which was not produced. *Id.* at § 1446(d)(3)(C); *see generally*, 7 U.S.C. § 1446(d)(1)–(6); 7 C.F.R. § 1430.400–.417 (1986).

Mr. Morgan first formally applied to participate in the Milk Diversion Program (MDP) with his execution of Form CCC–150 on January 31, 1984. That document states as follows: "Prior to the execution of this Form CCC–150 by the County Committee, such form shall be considered an offer by the producer to enter into a contract to participate in the Milk Diversion Program." The Form CCC–150 submitted by Mr. Morgan was never executed by the County Committee, *i.e.*, the Williamson County Agricultural Stabilization and Conservation Service (ASCS) Committee.

Previously, Mr. Morgan had completed and submitted to the County Committee several other forms required to determine his eligibility to participate in the MDP, including a Form ASCS–143 dated January 23, 1984, and Form ASCS–146 dated January 24, 1984. The latter was a certification concerning a certain transfer of 162 leased cows by Mr. Morgan to James C. McCanless on November 28, 1983. Mr. Morgan admitted that on November 28, 1983, he had returned 162 cows to the person from whom he had been leasing them, but maintained that he was eligible to participate in the program because the lease had actually been terminated orally on October 18, 1983, more than one month prior to their physical transfer. Because the McCanless transfer ostensibly violated 7 C.F.R. § 1430.410,[1] a

---

1. The appendix to Form CCC–150 paraphrased the program regulations published at 7 C.F.R. Part 1430.

The regulation in question, supplementing 7 U.S.C. § 1446(d)(3)(A), states:

§ 1430.410 Restrictions on transfers of dairy cows.

provision rendering any farmer who had transferred cows for other than specified purposes after November 8, 1983, ineligible to participate in the MDP, Mr. Morgan appeared before the County Committee on January 28, 1984, to request a waiver of that provision.

The County Committee initially recommended that the waiver requested by Mr. Morgan be granted, but later reversed itself, as indicated in the minutes of the committee meeting held on February 21, 1984, disapproving Mr. Morgan's waiver request and rejecting his application to participate in the MDP.

By letter dated March 20, 1984, Mr. Morgan requested a hearing before the County Committee, which was subsequently held on October 16, 1984. At that hearing, Mr. Morgan, represented by counsel, argued that the waiver should be granted because the cows were not under lease at the time of the transfer, but the committee rejected that contention as a matter of fact, and denied the appeal by letter dated October 18, 1984. The committee noted that its original recommendation that a waiver be granted was not approved by the Administrator, ASCS, or his designee as required by the program regulations. *See* 7 C.F.R. §§ 1430.403(c)(5), 1430.410(d).

Mr. Morgan subsequently appealed to the Tennessee State ASCS Committee by letter dated November 7, 1984, and a state committee hearing was held on November 28, 1984. By letter dated December 6, 1984, the State Committee also denied Mr. Morgan's request for a waiver. Mr. Morgan then appealed pursuant to the procedure set out at 7 C.F.R. Part 780 (1986) to the Assistant Deputy Administrator of ASCS, Thomas A. Von Garlom, who issued his decision finally denying Mr. Morgan's administrative appeal on the basis of his transfer of cows after November 8, 1983 and his failure to certify that the cows were transferred for the purposes and in the manner specified in 7 C.F.R. § 1430.-410(a)(1)–(3).

## DISCUSSION

Defendant moves the court to dismiss this action for lack of jurisdiction. The Tucker Act jurisdiction of the Claims Court is set forth at 28 U.S.C. § 1491 as follows:

> The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (1982).

Plaintiff alleges two bases for this court's jurisdiction: (1) an implied-in-fact contract between plaintiff and the United States, arising from plaintiff's application for participation in the milk program and the County Committee's recommended approval of plaintiff's application and (2) an arbitrary and capricious denial of participation in the Milk Diversion Program in violation

---

(a) After the date on which the offer to enter into the contract was submitted by the producer, a producer shall not sell, lease, or otherwise transfer, either directly or indirectly, dairy cows which would or could have been used by the producer for the production of milk if the producer had not executed a contract unless:

(1) The producer sells the dairy cows for slaughter and such cows are, in fact, slaughtered;

(2) The transfer is a sale, lease, or other transfer of dairy cows to another producer who has executed a milk diversion contract with CCC;

(3) The dairy cows are sold and delivered for export: *Provided,* that the producer is di-

vested of all interest in such cows and the cows do not reenter the United States.

\* \* \* \* \* \*

(c) If a unit includes dairy cows which were leased from another person as of November 8, 1983, the provisions of this section shall apply to such dairy cows, and the word "transfer" as used in this section shall include the return of such cows to the lessor.

(d) Notwithstanding any other provision of this section, a transfer by a producer participating in the program may also be approved if the Administrator, ASCS, or his designee, determines that the transfer will not defeat the goals of the Milk Diversion Program. 7 C.F.R. § 1430.410 (1986).

of his rights to due process and in violation of the Milk Diversion regulations.

### A. *Claim Founded on Implied-in-Fact Contract*

■ As to Mr. Morgan's allegation of the existence of an implied-in-fact contract,[2] it is clear that an application to participate in an agricultural support program alone is insufficient to create a contract entitling the applicant to program benefits. *Pope v. United States*, 9 Cl.Ct. 479, 485 (1986). As the court in *Pope* stated:

> A contract implied-in-fact requires a showing of the same mutual intent to contract as that required for an express contract. The fact that an instrument was not executed is not essential to consummation of the agreement. It is essential, however, that the acceptance of an offer be manifested by conduct that indicates assent to the proposed bargain. The requirements of mutuality of intent, and the lack of ambiguity in offer and acceptance, are the same for an implied-in-fact contract as for an express contract; only the nature of the evidence differs. The officer whose conduct is relied upon must have had actual authority to bind the Government in contract.

*Id.* at 485–486 (quoting *ATL, Inc. v. United States*, 4 Cl.Ct. 672, 675, *aff'd*, 735 F.2d 1343 (Fed.Cir.1984)). The court reasoned that the necessary mutuality of intent was missing where the plaintiff in that case merely applied to participate in a commodity price support loan program by filling out a form that expressly conditioned eligibility for benefits upon compliance with program regulations.

■ Here, Mr. Morgan, like the plaintiff in *Pope*, contends that the statutes underlying the MDP are, in fact, the government's offer to contract, and that his application to participate in the MDP is an acceptance of that offer. As in *Pope*, the allegation is simply inconsistent with the undisputed facts. The application itself, Form CCC–150, explicitly states that it is an offer by the applicant to the government, not the applicant's acceptance of an offer by the government. Furthermore, the program regulations also characterize Form CCC–150 as an offer by the applicant that does not mature into a contract until executed by both parties, and further prescribe that an applicant meet program eligibility requirements. 7 C.F.R. §§ 1430.-402(e), 1430.403, 1430.409 (1986).[3] In these circumstances, it is impossible as a matter of law to find the requisite mutual intent for an implied-in-fact contract from the mere fact of Mr. Morgan's application to participate in the MDP.

■ Mr. Morgan further alleges that a contract arose from the committee's actions since he received the required waiver with the County Committee's initial recommendation. Plaintiff argues that a contract implied in fact arises by virtue of the fact that he timely applied, asked for waiver, and received approval of the waiver from the local committee; at that point, plaintiff alleges that there was a meeting of the minds and that he was entitled to rely on the waiver. However, the County Committee's authority to bind the United States with respect to the MDP is limited by the following provision:

> No delegation herein to a State or county committee shall preclude the Administrator, ASCS, or a designee, from determining any question arising under the program or from reversing or modifying any

---

**2.** "In a series of recent cases this court has had occasion to summarize the essentials for finding an implied contract with the United States." *Pope v. United States*, 9 Cl.Ct. 479, 485 (1986) (citing *Nitol v. United States*, 7 Cl.Ct. 405, 415 (1985); *ATL, Inc. v. United States*, 4 Cl.Ct. 672, 675, *aff'd.*, 735 F.2d 1343 (Fed.Cir.1984); *H.F. Allen Orchards v. United States*, 4 Cl.Ct. 601, 606 (1984), *aff'd*, 749 F.2d 1571 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *Pacific Gas & Elec. Co. v. United States*,

3 Cl.Ct. 329, 338–39 (1983), *aff'd*, 738 F.2d 452 (Fed.Cir.1984)).

**3.** Given the unreviewable (by virtue of 7 U.S.C. § 1385) factual finding that Mr. Morgan transferred cows after November 8, 1983, it would have been illegal to enter into a contract with Mr. Morgan absent a waiver of the transfer restrictions stated at 7 U.S.C. § 1446(d)(3)(B)(iii) and reiterated at 7 C.F.R. § 1430.410.

determination made by a State or county committee.

7 C.F.R. § 1430.401(d).

Even more significantly, 7 C.F.R. § 1430.-410(d) explicitly reserves the power to make waiver determinations to the Administrator of the ASCS or his designee, in this case ASCS Assistant Deputy Administrator Thomas A. Von Garlom. Consistent with its inability under law to make a binding waiver determination, the County Committee only *recommended* approval of the requested waiver. Even if Mr. Morgan's specious allegations about actions taken and losses suffered in reliance upon the County Committee's initial waiver recommendation were true,[4] such reliance was unjustified in the face of a regulatory scheme and factual circumstances that clearly gave that recommendation no binding effect. The County Committee clearly could not have created an implied-in-fact contract because "the federal government is not bound by its agents acting beyond their authority and contrary to regulations." *National Bank of South Carolina v. United States,* 1 Cl.Ct. 33, 37 (1982) (quoting *National Bank of South Carolina v. United States,* 223 Ct.Cl. 573, 577, 621 F.2d 1109, 1111 (1980)) (citing *Schweiker v. Hansen,* 450 U.S. 785, 788–89, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947); *Yosemite Park and Curry Co. v. United States,* 217 Ct.Cl. 360, 370, 582 F.2d 552, 558 (1978)).

As this court stated in *Brannan v. United States,* 7 Cl.Ct. 399 (1985), "In order to determine the existence of an implied-in-fact contract between parties, conduct of the parties and other circumstances surrounding the transaction must be sufficient to warrant the inference, as a fact, that there has been a meeting of the minds between the parties, involving a definitive offer by one party and an unequivocal acceptance by the other." *Id.* at 404. The *Brannan* court also stated that consideration is essential to any valid contract whether express or implied in fact. *Id.* at

405. After a review of undisputed facts in the record, the court does not consider the County Committee's recommended approval of plaintiff's application to warrant an inference that there has been a "meeting of the minds" and an "unequivocal acceptance" by the government. *Id.* at 404. On the contrary, the court considers the committee's recommended approval to be nothing more than a "conditional commitment that never ripened into either an express or an implied contract between the United States" and plaintiff. *Id.* Even if the "recommended approval" were construed to be an approval without limitation, the County Committee would have acted beyond its authority.

In sum, an implied-in-fact contract cannot exist in these circumstances by virtue of either Mr. Morgan's unsuccessful application to participate in the MDP or the County ASCS Committee's recommendation that Mr. Morgan's ineligibility under the transfer regulations to participate in the program be waived. The fact that Mr. Morgan had no contract distinguishes this case from *Gross v. United States,* 205 Ct.Cl. 605, 505 F.2d 1271 (1974), and *Pettersen v. United States,* 10 Cl.Ct. 194 (1986), in which similar program eligibility determinations were upheld on their merits, and puts it squarely within the holdings of *Pope* and *Brannan.*

### B. Claim Founded on Constitution, Statute or Regulation

Plaintiff further alleges that the Department's decision was arbitrary, capricious, and an abuse of discretion under the controlling statutes and regulations, as well as violative of the Fifth Amendment. Plaintiff seeks monetary damages arising from what he alleges to have been an erroneous decision by the Department of Agriculture to deny his application to participate in the Milk Diversion Program.

▬▬ The mere assertion of a "claim against the United States founded either upon the Constitution ... or any regulation of an executive department," 28 U.S.C.

---

4. However, the record establishes that the alleged slaughter of his herd in supposed reliance

upon the County Committee's actions occurred weeks before the January 28, 1984 meeting.

§ 1491 (1982), is not sufficient grounds for Claims Court jurisdiction. *United States v. Testan,* 424 U.S. 392, 402, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1972). For the Claims Court to be the proper forum for resolution of plaintiff's claims for money damages against the United States, plaintiff must first show that there is a statute that may be fairly construed as mandating recovery of compensation from the United States, thereby waiving sovereign immunity. *Id.* at 399–401, 96 S.Ct. at 953–55. Plaintiff must show that either money was "improperly exacted or retained" by the government or that there is some aspect of federal law which commands the payment of money. *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1008 (1967). In *Eastport,* the Court of Claims held that recovery of damage is available when the cited regulation or legislation mandates "compensation by the Federal Government for the damage sustained." *Id.,* 372 F.2d at 1009. Furthermore, it is well settled that waivers of sovereign immunity, so as to permit suit for money damages and to confer jurisdiction upon a specific tribunal, must be explicit, *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969), and "must be strictly construed by the courts." *Brannan,* 7 Cl.Ct. at 403; *Bennett v. Department of the Navy,* 699 F.2d 1140, 1145 (Fed.Cir.1983).

Plaintiff has failed to show how the Fifth Amendment mandates the recovery of compensation in the manner necessary to provide a jurisdictional basis for Claims Court adjudication and, in fact, he cannot. The due process clause of the Fifth Amendment does not provide a basis for recovery of money damages in the Claims Court. *Muehlen v. United States,* 209 Ct.Cl. 690, 529 F.2d 533 (1976) (citing *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967)); *Myers v. United States,* 231 Ct.Cl. 965, 966 (1982). Thus, even if the court were to assume that the alleged violations of the Fifth Amendment did occur, for the purposes of this motion, the court should still dismiss Mr. Morgan's claim for lack of jurisdiction.

With respect to an arbitrary or capricious action or abuse of discretion, there is absolutely nothing in the statutory and regulatory scheme underlying the program that could be construed as conferring upon a disappointed applicant the right to bring suit to obtain the monetary benefits he would have received had his application been accepted, much less the right to seek recovery of consequential damages arguably arising from the rejection of his application. Judicial review of the factual finding that Mr. Morgan would have the court reverse, *i.e.,* the finding that he transferred leased cows after November 8, 1983, is barred by 7 U.S.C. § 1385 (1982), which accords finality to the factual determinations underlying a decision that an applicant is not eligible to participate in a price support program. *See Gross,* 205 Ct.Cl. at 618, 505 F.2d at 1279 (upholding Department of Agriculture's retroactive revocation of claimant's feed grain contracts for fraud).

Plaintiff asserts by analogy with existing federal employment practices that he is entitled by statute and regulation to MDP payments. However, the analogy between unsuccessful MDP applicants like plaintiff and the terminated federal employees who were plaintiffs in *Fausto v. United States,* 783 F.2d 1020, *reh. denied,* 791 F.2d 1554 (Fed.Cir.1986), and' *McClary v. United States,* 775 F.2d 280 (Fed.Cir.1985), is that the latter had achieved a status that entitled them to compensation, *i.e.,* federal employment, whereas plaintiff never reached that threshold because his MDP contract application was only recommended for approval, not accepted by the ASCS Committee.

Finally, regarding Mr. Morgan's assertion that he should have been granted a waiver of the applicable regulations, presumably pursuant to 7 C.F.R. § 1430.-410(d), which allows ASCS to approve a transfer of cows that would otherwise violate that section if "the transfer will not defeat the goals of the Milk Diversion Program," it is clear that such a decision is, by its plain terms, discretionary with the agency. This court has consistently held that it

lacks jurisdiction to review "claims for money, the allowance of which are wholly discretionary with an executive official." *Adair v. United States*, 227 Ct.Cl. 345, 350, 648 F.2d 1318, 1322 (1981); *J.W. Pope Company v. United States*, 9 Cl.Ct. 479, 485 (1986); *Uraga v. United States*, 4 Cl.Ct. 106 (1983).

## CONCLUSION

Defendant's Motion to Dismiss is granted because the recommended approval of plaintiff's participation in the milk program did not create an implied-in-fact contract between plaintiff and defendant. Moreover, there is no statute or regulation that can be fairly construed as mandating recovery of compensation from the United States in this court. The Clerk of the court is directed to dismiss the Complaint.