Richard **HALBERT** d/b/a **Flax Island Farm, Plaintiff,**

v.

The **UNITED STATES, Defendant.**

No. 624–87C.

United States Claims Court.

Aug. 9, 1989.

Kenneth P. Ray, Utica, N.Y., for plaintiff.

Peter G. Barber, with whom were David B. Stinson, and Acting Asst. Atty. Gen. Stuart Schiffer, Washington, D.C., for defendant.

## OPINION

RADER, Judge.

In this contract action, Mr. Richard Halbert, a New York dairy farmer (plaintiff), seeks money damages under the Tucker Act, 28 U.S.C. § 1491 (1982). Plaintiff applied to participate in the Milk Diversion Program (Program) authorized by the Dairy and Tobacco Adjustment Act of 1983 (Act), Pub.L. No. 98–180, 97 Stat. 1128 (1983). The United States Department of Agriculture (USDA) denied the application. Plaintiff contends the denial was arbitrary, capricious, and unreasonable. Defendant responds that the United States Claims Court lacks jurisdiction to decide plaintiff's claim.

This court was assigned this case on October 18, 1988. After some argument in conjunction with a status conference, this court needs no further oral argument to resolve the legal issues. Plaintiff does not show a basis for Claims Court jurisdiction. Therefore, this court grants defendant's motion to dismiss.

## FACTS

The USDA administers the Program. 7 U.S.C. § 1446 (Supp. I 1983). The Program seeks to reduce the total amount of milk produced in the United States with the goal of stabilizing market prices. Under the Program, the Commodity Credit Corporation (CCC) enters into contracts with eligible dairy farmers. The farmers agree by contract to reduce their milk production in exchange for price support payments. Essentially, the CCC agrees to pay for the milk which was not produced. *See generally*, 7 U.S.C. §§ 1446(d)(1–6); 7 C.F.R. §§ 1430.400–1430.469 (Supp. I 1987).

In December 1983, before formally applying to participate in the Program, plaintiff had an extra 16 purebred cows in his barn. Plaintiff possessed these cows under a lease agreement which was terminable at will by the owner, Dr. Mathews. During this time period, plaintiff informed William Gibson, County Executive Director of the Agricultural Stabilization and Conservation Service (the Service), of the lease agreement and inquired if he should divest himself of the leased cows. Mr. Gibson advised plaintiff against divestment. In Mr. Gibson's judgment, divestment would make plaintiff ineligible to participate in the Program. Plaintiff retained possession of the cows. Then, despite not having yet entered into a formal contract with the USDA, plaintiff proceeded to reduce the size of his herd by slaughtering 24 of his dairy cows between December 15, 1983 and February 1, 1984.

Mr. Halbert first formally applied to participate in the Program with the execution of Form CCC–150 on January 18, 1984. The application stated:

Prior to the execution of this Form CCC–150 by the County Committee, such form shall be considered an offer by the producer to enter into a contract to participate in the Milk Diversion Program.

Shortly after making application, plaintiff received notice from Dr. Mathews (the owner of the leased cows) to return the cows. In early February, pursuant to this demand, Dr. Mathews removed the cows.

Soon after execution of Form CCC–150, the Service advised plaintiff that he was ineligible to participate in the Program. The Service explained that plaintiff's removal of the leased cows from his farm, after the date of January 1, 1984, violated

§ 102(a) of the Act. Under this section, a milk producer who transfers dairy animals after January 1, 1984, remains eligible for the program only if the cows are: (1) transferred to another unit in the program, (2) slaughtered, or (3) exported. The Act provides no other exceptions. The removal of cows from plaintiff's herd, according to the rejection notice, did not comply with these exceptions.

Plaintiff pursued his claim against the Service's decision. By memorandum dated January 20, 1984, from Mr. Gibson to the New York State ASC Committee, the Otsego County Committee determined that Mr. Halbert could still participate in the Program if he reacquired the lost cows within two weeks. Plaintiff, however, did not regain possession of the lost cows.

Thereafter, the Service informed plaintiff that he was ineligible to participate in the program. After denial of administrative appeals, plaintiff filed a claim in the United States Claims Court.

## DISCUSSION

Pursuant to RUSCC 12(b), defendant moves to dismiss this action for lack of jurisdiction. Plaintiff argues that its claim fits within the Tucker Act.[1] Plaintiff alleges that he entered an implied-in-fact contract with the United States within the terms of the Tucker Act by applying to participate in the Program. Further, plaintiff alleges that the USDA regulations contravene the plain language of the Act and that the USDA arbitrarily and capriciously denied his participation in the Program.

### A. Implied-in-Fact Contract Claim

■ Plaintiff alleges that his application for participation in the Program gave rise to an implied-in-fact contract. The Claims Court has established that an application to participate in an agricultural support program alone does not create a contract.[2]

In *Morgan v. United States*, 12 Cl.Ct. 247 (1987), the Claims Court denied jurisdiction to another farmer seeking admission to the Program after transferring 162 leased cows from his herd without complying with § 102(a) of the Act.[3] In *Morgan,* the dairy farmer also asserted that jurisdiction sprang from an implied-in-fact contract based upon the mere filing of an application. The court stated:

[P]laintiff ... contends that the statutes underlying the MDP are, in fact, the government's offer to contract, and that his application to participate in the MDP is an acceptance of that offer. As in *Pope,* the allegation is simply inconsistent with the undisputed facts. The application itself, Form CCC–150, explicitly states that it is an offer by the applicant to the government, not the applicant's acceptance of an offer by the government. Furthermore, the program regulations also characterize Form CCC–150 as an offer by the applicant that does not mature into a contract until executed by both parties, and further prescribe that an applicant meet program eligibility requirements. 7 C.F.R. §§ 1430.402(e), 1430.409 (1986). In these circumstances, it is impossible as a matter of law to find the requisite mutual intent for an implied-in-fact contract from the mere fact

1. The primary jurisdictional statute of the Claims Court is the Tucker Act, which is set forth at 28 U.S.C. § 1491 as follows:
   The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.
   28 U.S.C. § 1491(a)(1) (1982).

2. *Morgan v. United States,* 12 Cl.Ct. 247 (1987); *Pope v. United States,* 9 Cl.Ct. 479, 485–86 (1986)

(citing *Nitol v. United States,* 7 Cl.Ct. 405, 415 (1985); *ATL, Inc. v. United States,* 4 Cl.Ct. 672, 675, *aff'd,* 735 F.2d 1343 (Fed.Cir.1984); *H.F. Allen Orchards v. United States,* 4 Cl.Ct. 601, 606 (1984), *aff'd,* 749 F.2d 1571 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985)); *c.f., Grav v. United States,* 14 Cl.Ct. 390 (1988).

3. In a status conference, counsel for both parties agreed that the case at bar is virtually indistinguishable from the *Morgan* and *Grav* cases. Transcript of Proceedings, No. 624–87C, filed Dec. 6, 1988, at 8–9, 14.

of Mr. Morgan's application to participate in the MDP.

*Morgan,* 12 Cl.Ct. at 251 (footnote omitted).

Plaintiff in the case at bar made an application to participate in the Program. The application was, by its terms, an offer which the USDA declined to accept due to plaintiff's ineligibility. The USDA did not consider the application to be acceptance of a universal offer made by Congress in the Act. Thus, no meeting of the minds on specific contract terms occurred. Because the USDA declined to accept plaintiff's offer, no contract—express or implied—arose.

Plaintiff further alleges that an implied contract arose from the County Committee's initial approval of his request for milk base, Form ASCS–142, on January 26, 1984. Plaintiff claims that this constituted approval of plaintiff's application. Approval of Form ASCS–142 does not create a contract. *See O'Connell v. United States,* 14 Cl.Ct. 309, 313–15 (1988). Under the applicable regulations, a contract arises only upon execution of Form CCC–150 by the County Commissioner. 7 C.F.R. § 1430.402. The County Commissioner did not execute Form CCC–150 in this case.

Furthermore, the County Committee's recommended approval of plaintiff's Form ASCS–142 does not amount to a meeting of the minds or an unequivocal acceptance by the USDA. The Committee's recommendation was merely a preliminary appraisal of plaintiff's eligibility for program payments. Later, plaintiff executed a formal offer, Form CCC–150, which was rejected. Even if the Committee's recommendation constituted an effort to approve plaintiff for inclusion in the Program, the County Committee would have been acting beyond its authority. *Morgan,* 12 Cl.Ct. at 251–52.

No implied-in-fact contract arose in this case. The USDA rejected plaintiff's formal application to participate in the Program. Moreover, the County Committee's preliminary approval of plaintiff's marketing history alone did not and could not create a contract.

### B. *USDA Regulations*

■ Plaintiff also alleges entitlement to jurisdiction in the Claims Court because the USDA regulations contravene the language of the Program statute and because the USDA arbitrarily and capriciously excluded him from participation in the milk program. The Claims Court has addressed these allegations as well and determined that they do not establish jurisdiction. *Morgan,* 12 Cl.Ct. at 252–53.

The Claims Court in *Morgan* determined that mere allegations that the Government has violated an Act of Congress do not establish Tucker Act jurisdiction. *Id.* at 252–53. Rather, the allegation must include a showing that violation of the statute entitles the victim to receive a monetary recovery. *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1008 (1967). In other words, Congress must explicitly waive sovereign immunity. *United States v. Testan,* 424 U.S. 392, 399–401, 96 S.Ct. 948, 953–55, 47 L.Ed.2d 114 (1976). The Claims Court in *Morgan* determined that the milk producer did not show that the Program fit these jurisdictional prerequisites. *Morgan,* 12 Cl.Ct. at 253–54. Moreover, plaintiff in the case at bar does not show that Congress explicitly waived sovereign immunity or created a monetary remedy for Program violations. Therefore, plaintiff fails to show that the Claims Court has jurisdiction.

The court in *Morgan* similarly rejected the argument that the USDA's alleged arbitrary and capricious actions somehow conferred jurisdiction upon the court:

> With respect to an arbitrary or capricious action or abuse of discretion, there is absolutely nothing in the statutory and regulatory scheme underlying the program that could be construed as conferring upon a disappointed applicant the right to bring suit to obtain the monetary benefits he would have received had his application been accepted, much less the right to seek recovery of consequential damages arguably arising from the rejection of his application.

*Morgan,* 12 Cl.Ct. at 253.

This court follows *Morgan* and rejects plaintiff's arguments. Plaintiff does not

present sufficient evidence to permit this court to find jurisdiction in the Claims Court.

## CONCLUSION

This court grants defendant's motion to dismiss. Neither plaintiff's unsuccessful application to participate in the Program nor the Committee's recommended approval of plaintiff's request for a milk base create an implied-in-fact contract. Moreover, no statute or regulation exists which can be fairly construed as mandating recovery of compensation from the United States in this court. The Clerk of the court is therefore directed to enter judgment dismissing plaintiff's complaint.

No costs.